REID v. SANFORD, Warden.
No. 1681.

District Court, N. D. Georgia,
Atlanta Division.
Dec. 23, 1941.

William J. Reid, in personam, for petitioner.

Lawrence S. Camp, U. S. Atty., and Harvey H. Tysinger, Asst. U. S. Atty., both of Atlanta, Ga., for respondent.

UNDERWOOD, District Judge.

Petitioner was convicted in the Supreme Court of the District of Columbia on February 4, 1920, upon an indictment of three counts, the first charging forgery, the second and third, the uttering and publishing of the forged document. On February 21, 1920, after overruling a motion for new trial, the Court imposed consecutive sentences of ten years on each count.

On March 11, 1920, in open court, petitioner's attorney noted an appeal to the Court of Appeals of the District of Columbia which was granted and allowed to be prosecuted in forma pauperis. Thereupon, having obtained leave of court, he withdrew as counsel for petitioner. Petitioner immediately requested the Court to appoint new counsel to prosecute the appeal but this request was denied. Petitioner was unable to employ counsel until after his release on bond, July 6, 1922.

The request for and denial of counsel did not appear on the minutes of the Court, but later an order of court filed September 17, 1924, directed that the minutes be corrected nunc pro tunc to show same.

Petitioner applied, by letter dated March 30, 1920, to the Court of Appeals of the District of Columbia for appointment of counsel and the Clerk, by direction of the Court, by letter dated April 19, 1920, suggested that petitioner make another application to the Trial Court for appointment of counsel. This petitioner did, but had no reply to his request.

After denial of his request for appointment of counsel, petitioner undertook, in July or August, 1920, to prepare his own case on appeal, using a copy of a bill of exceptions prepared by an attorney for a fellow prisoner as a guide.

On October 28, 1920, as shown by the minutes of the Court, petitioner submitted his bill of exceptions in open court. He thought that same had been sanctioned, but was advised later that it had not been, and still later, that it had been lost.

Time for submission of a bill of exceptions was extended from time to time until December 6, 1922, in spite of the fact that the minutes showed that one was submitted on October 28, 1920. On December 6, 1922, a bill of exceptions was presented to the Trial Court, by petitioner's counsel, employed approximately two and one-half years after the withdrawal of original counsel, and on that day the Court signed and sealed same with "the same force and effect as if signed at the trial before the jury retired." Petitioner testified, and was not contradicted, that this bill of exceptions was not the one he had prepared and submitted.

The case was submitted to the Court of Appeals of the District of Columbia on October 3, 1923, reargued on May 15, 1924, and decided June 2, 1924. Read v. United States, 55 App.D.C. 43, 299 F. 918. Petition for writ of certiorari was denied by the Supreme Court of the United States on March 2, 1925. Read v. United States, 267 U.S. 596, 45 S.Ct. 352, 69 L.Ed. 805.

Petitioner was confined in jail from the date of the verdict, February 21, 1920, until July 6, 1922, nearly two and one-half years, when he was released on bond.

Respondent introduced no evidence explaining the alleged loss of petitioner's bill of exceptions or why the minutes showed the submission of same on two dates, October 28, 1920, and December 6, 1922; but it appears that a bill of exceptions was filed by petitioner's new counsel, after his release from jail and over two years after the submission of the first bill of exceptions by petitioner, and it is possible that the attorneys abandoned the bill of exceptions prepared by petitioner himself, though this does not appear of record. At any rate, it appears that petitioner was without counsel during a period of approximately two and one-half years when he was endeavoring to have the Court appoint one and trying to get his case before the Court of Appeals. This time was spent in jail as petitioner was unable to give bond and he was given no credit for it, because he had noted an appeal. Petitioner has been in the penitentiary continuously since October 31, 1925.

Petitioner alleges as grounds for a writ of habeas corpus that: (1) He was denied his constitutional right to benefit of counsel during an important stage of the trial, (2) he was denied due process of law in that the time for filing his bill of exceptions was extended beyond periods allowed by law, (3) he was denied opportunity to be heard upon the submission of his bill of exceptions, and (4) because the second bill of exceptions was accepted as the true one instead of the one filed October 28, 1920, and was sanctioned and signed after the lawful expiration of the time in which it could be presented.

It appears with respect to all the grounds alleged, except the first, that none is sufficient to support a writ of habeas corpus and that although there were excessive delays and unexplained irregularities by which petitioner suffered through no fault of his own, nevertheless, the Trial Court and the Court of Appeals accepted the bill of exceptions finally filed by petitioner's new attorneys and decided the case thereon, which decision the United States Supreme Court declined to review.

Petitioner claims that the second bill of exceptions differed from the one he prepared and submitted on October 28, 1920, and that same was incomplete and incorrect, but on the other hand, the record shows that it was filed by his attorneys as the only bill of exceptions and was accepted and acted upon as such by all the courts.

■ Petitioner claims that his original draft of the bill of exceptions was lost and that the one actually filed in the record was prepared by the United States Attorney, but the record does not support this contention. This Court must accept the record as true showing that the bill of exceptions sanctioned by the Trial Court was presented by petitioner's attorneys on his behalf. Riddle v. Dyche, 262 U.S. 333, 43 S.Ct. 555, 67 L. Ed. 1009.

■ The question of petitioner's guilt or innocence was determined in the Trial Court, the findings of which were approved by the Court of Appeals and certiorari denied by the United States Supreme Court. These facts can not be reviewed in a habeas corpus proceeding.

This leaves, however, the very serious question as to whether or not, under the decision in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, petitioner was denied his constitutional right to counsel, it clearly appearing from the record that he was, by express action of the Trial Court, denied counsel after request therefor following his conviction during a period of nearly two and one-half years and while petitioner was confined in jail and trying to perfect his appeal.

■ While the Trial Court refused to appoint counsel to represent petitioner on appeal, nevertheless, petitioner finally was able, upon his release on bond, to employ counsel who apparently raised every question that could have been passed upon on appeal except the question of denial of counsel. Whether the acts of the Trial and Appellate Courts were trial irregularities or not, it seems that finally all issues that could be raised, were determined on appeal, except the question of denial of counsel, which the Court of Appeals declined to pass on because not mentioned in the bill of exceptions. This question is properly raised in this proceeding.

The question here, then, is whether the Trial Court must, in a proper case and upon request, appoint counsel to represent a defendant, after conviction, in the prosecution of an appeal, which has been allowed, and if so, whether or not, after refusal of the Court to make such appointment, the final procurement of counsel by a defendant in time to have determined by the Appellate

Court all issues, except that of the appointment of counsel, would operate as a waiver of the right to counsel during the period he was without same, or, if not a waiver, would such assistance of counsel satisfy his constitutional rights.

■ I doubt that the long imprisonment while perfecting his appeal, however unjust it may have been, due to trial irregularities and not to petitioner's fault, can be remedied in a habeas corpus proceeding (Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461), though it should be if possible, in view of the fact that maximum consecutive sentences were imposed on the three phases of a single transaction. The fact may be considered, however, in weighing the result of the denial of a constitutional right, if that be shown.

■ Petitioner was entitled, upon his timely request, to the assistance of counsel at all stages of the trial. "He requires the guiding hand of counsel at every step in the proceedings against him." Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527.

■ When petitioner was granted an appeal in forma pauperis, all subsequent necessary proceedings until final decision on appeal represented steps in the trial of the case at which he was entitled to counsel. The fact that the appeal in forma pauperis was allowed was a finding by the Court that the trial was not ended, but extended until final determination upon appeal.

The Supreme Court held in Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, that: "A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed."

■ If the Court lost jurisdiction through failure to appoint counsel, then, unless jurisdiction was in some manner restored, subsequent proceedings were void and the judgment never became final nor one that would support imprisonment.

■ There was certainly no waiver of counsel during the long period of time petitioner was seeking the appointment of counsel. The question, then, arises, did petitioner's acts in employing counsel as soon as he was released on bond and in authorizing them to perfect and prosecute the appeal, constitute a waiver of the court's failure to appoint counsel and restore to the court jurisdiction to complete the case? This is a difficult question in view of the decisions of the Court of Appeals and the Supreme Court which apparently passed on the merits of this case.

This case is distinguished from the case of Earl Edward Kent v. Joseph W. Sanford, 5 Cir., 121 F.2d 216. In the latter case, the defendant had counsel at all stages of the trial, counsel not having withdrawn therefrom, and it was a question only of a temporary absence from the court room of counsel, but not of defendant, when the verdict was rendered and sentence passed. Counsel appeared in court the next morning and advised the Court no motion for new trial would be made. None was made and no appeal was taken. The judgment, therefore, became final at a time when defendant was represented by counsel of record. In the case at bar, petitioner was actually allowed an appeal and expressly and earnestly asked for appointment of counsel which was expressly denied by the Court.

In the present case, petitioner was denied counsel during important stages of his trial and was thereby not only technically deprived of a constitutional right, but actually suffered very substantial injury because of the denial of such right. As a consequence, the Court lost jurisdiction of his case and subsequent proceedings were void, since no waiver of this right has been established.

As stated by the Supreme Court: "If these contentions be true in fact, it necessarily follows that no legal procedural remedy is available to grant relief for a violation of constitutional rights, unless the courts protect petitioner's rights by habeas corpus." Johnson v. Zerbst, 304 U.S. 458, 467, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461.

In accordance with the above, I find that petitioner's detention is unlawful, and it remains only for the Court to determine how to "dispose of the party as law and justice require."

■ The record shows that petitioner has earned all statutory good time and also extra good time. It also shows, as already stated, that petitioner was confined in jail for nearly two and one-half years while the prosecution of his appeal was delayed through failure to appoint counsel. If these

304

periods of time be considered, he has, regardless of the validity or invalidity of the sentences, already served about all that would be required on a valid thirty-year sentence.

I am of opinion, therefore, that "law and justice require" his discharge.

Whereupon, it is considered, ordered and adjudged that the writ of habeas corpus be, and same hereby is sustained and that the respondent discharge petitioner from custody at the end of twenty days from this date, unless a further stay be granted by this Court; such delay being allowed to afford opportunity for appeal if desired.